UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JASON SETH PERRY, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 1:18-cv-04054-TWP-DML |
| WARDEN, | ) ) ) |
| Respondent. | ) |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Jason Perry's ("Mr. Perry") petition for a writ of habeas corpus challenges his conviction in a prison disciplinary proceeding identified as NCN 18-06-0038. For the reasons explained in this Entry, Mr. Perry's petition is **denied**.

## I. Overview

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

NCN 18-06-0038 began with a conduct report, which Officer Martin wrote on June 16, 2018. Dkt. 12-1. Officer Martin wrote that at approximately 7:43 A.M., he:

> was conducting [illegible] check into Pod 3. Offender Perry DOC # 138925 spit a full cup of urine on ME. Photos (pictures) were taken after the incident as proof. Offender Perry DOC # 138925 was informed about this conduct.

*Id.* The photos show Officer Martin wearing a water-repellant garment and a plastic face shield, both of which have a liquid splashed on them. Dkt. 1-2.

On June 19, 2018, Mr. Perry received a screening report notifying him that he was charged with assault in violation of A-102. Dkt. 12-3. The screening report indicates that Mr. Perry requested statements from three inmates in nearby cells, plus security video from the dayroom from 7:30 until 8:00 A.M. on the day of the incident. *Id.*

The hearing officer later wrote on the screening report, "Dayroom video is irrelevant, have video of cell door '215.'" *Id.* On June 21, 2018, the hearing officer prepared the following written summary of the video from outside cell 215:

> The video for the above case was reviewed from 07:30 to 08:00 as the offender requested. Video shows the offender in cell 215 throw a cup of something on the Officer. It is inconclusive if he spit it as well.
>
> Camera does not record sound.

Dkt. 12-7. The hearing officer checked a box on the video review form to indicate that allowing Mr. Perry to view the video would jeopardize prison safety and security. *Id.*

NCN 18-06-0038 proceeded to a hearing on June 27, 2018. Dkt. 12-6. It appears that this was Mr. Perry's second disciplinary hearing that day, that both hearings involved incidents from the morning of June 16, and that the same hearing officer presided over both hearings. *See id.*; dkt. 1 at 2.

2

The hearing officer's report states that Mr. Perry made the following statement in his defense: "I did not spit a cup of urine. It could have been anything in the cup. He did not give me a tray." Dkt. 12-6. Nevertheless, the hearing officer found Mr. Perry guilty. *Id.* The hearing officer's explanation indicates that he determined that the liquid Mr. Perry threw at Officer Martin must have been urine because video from the earlier incident showed him emptying the original contents of the cup. *Id.* The hearing officer's explanation of his decision is as follows:

> Dayroom video is irrelevant, have video of cell door "215."
>
> Based on cond. report, evidence, <u>video</u> offender and witness statement. Video for case NCN 18-06-0037 shows he was given the cup a[t] approx. 06:43 and threw the juice in it on C/O K. Martin so the cup was refilled with another item said to be urine by C/O K. Martin. —Guilty—

*Id.*

The hearing officer assessed sanctions, including the loss of 180 days' earned credit time. *Id.* Mr. Perry's administrative appeals were unsuccessful. Dkts. 12-11, 12-12.

### III. Analysis

Mr. Perry asserts four different reasons why he believes he is entitled to habeas relief. For the reasons discussed below, all four fall short of establishing a due-process violation.

**A.     Sufficiency of the Evidence**

Mr. Perry argues that his conviction was not supported by sufficient evidence. Specifically, he argues that no evidence has confirmed that the substance thrown on Officer Martin was urine. Dkt. 1 at 2.

However, "a hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is

3

*any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added). *See also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). A conduct report "alone" can "provide[] 'some evidence' for the . . . decision." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999); *see also Wilson-El v. Finnan*, 311 F. App'x 908, 910 (7th Cir. 2008) (citing *McPherson*).

The hearing officer reviewed security video showing Officer Martin walk past Mr. Perry's cell. That video shows Mr. Perry throw a cup of liquid on Officer Martin. Photographs show that Mr. Martin was covered in the liquid afterward. And Officer Martin stated in the conduct report that the liquid was urine. This circumstantial evidence supports the conclusion that Mr. Perry "place[d] any bodily fluid or bodily waste on" Officer Martin and thereby violated Code A-102. *See* dkt. 12-14.

Mr. Perry does not dispute any of these facts. He merely argues that the prison staff did not prove that the liquid thrown at Officer Martin was urine. But Officer Martin's conduct report is "some evidence" supporting the conclusion that the liquid was urine, and that is enough to support Mr. Perry's conviction in a disciplinary proceeding. *See McPherson*, 188 F.3d at 786.

**B.     Denial of Video Evidence**

Mr. Perry argues that the hearing officer's denial of his request for the dayroom video deprived him of due process. Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of

4

a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). Mr. Perry does not explain what he believes the dayroom video would have shown or how he believes it would have undermined the hearing officer's decision and created a reasonable probability of a different outcome.

The manner in which the hearing officer denied Mr. Perry's request—simply writing that the video requested was irrelevant because other video was available—was by no means a best practice. There are cases in which two videos shot from two cameras can both be relevant. One may show persons, things, or actions that are obscured in the other.

Unfortunately, for Mr. Perry, this is not such a case. Mr. Perry requested video from the dayroom camera from 7:30 until 8:00 on the morning of June 16. Dkt. 12-3. Video from the camera outside Mr. Perry's cell during that time shows beyond dispute that Mr. Perry poured a liquid on Officer Martin. Video from a different camera cannot undermine the conclusion that Mr. Perry threw the liquid at Officer Martin. And Mr. Perry has not explained how the dayroom video would undermine the conclusion that the liquid was urine.

It is not always true that a second piece of video will be irrelevant in a disciplinary hearing. But the specific facts of this case—coupled with Mr. Perry's failure to provide any reason why the second video would be material or exculpatory—precludes the Court from finding a due process violation.

**C.     Opportunity to Prepare**

Mr. Perry asserts that he was deprived of due process because he was not given an adequate opportunity to prepare his defense. His petition indicates that, shortly after his encounter with Officer Martin, Mr. Perry was moved out of his housing unit and into suicide watch, where he remained when he was issued the screening report on June 19, 2018. *See* dkt. 1 at 2. Because he

5

was not in his own housing unit, Mr. Perry states, he could not think of what evidence to request or what cell numbers would have housed the likely witnesses. *See id.* Mr. Perry states that it "is unheard of to screen" an inmate in a suicide cell. *Id.* The petition indicates that Mr. Perry was released and returned to his regular cell later on June 19.

Due process requires that an inmate be given advanced "written notice of the charges . . . in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. This notice must be issued *at least* 24 hours before the hearing. *See id.* ("At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance . . . ."). "The purpose of the minimum 24 hour notice requirement is so that the inmate has an opportunity to prepare for the appearance before the CAB." *Shephard v. Duckworth*, 106 F.3d 403, 1996 WL 9774, at *2 (7th Cir. 1997).

Harmless error analysis applies to due process violations in prison disciplinary proceedings. *See Jones*, 637 F.3d at 847; *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Mr. Perry's petition shows that any encroachment on his ability to prepare his defense was minimal and harmless.

Mr. Perry does not contest the fact that he received clear and adequate notice of the charges against him well over 24 hours before his hearing. Instead, his petition indicates that his ability to request relevant evidence was hampered because he was notified of the charge while he was on suicide watch. But Mr. Perry concedes that he was released from suicide watch and returned to his cell later that day—more than a week before the hearing. There is no indication that Mr. Perry attempted to request additional evidence during that week. And, most importantly, Mr. Perry has not stated what evidence he would have requested if he had been screened in his own cell or why that evidence would have been material and exculpatory.

Insofar as Mr. Perry argues that screening him while on suicide watch deprived him of due process because it broke from the usual protocol, this is not a basis for habeas relief. Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner,* 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis,* 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief.").

**D.     Impartiality of Decision-Maker**

Finally, Mr. Perry asserts that he was denied his right to an impartial decision-maker on two grounds. First, he states that his hearing officer in this case is the same officer who has presided over every disciplinary hearing he has had at New Castle Correctional Facility and has carried a grudge since Mr. Perry "lunged at him" during a previous hearing. Dkt. 1 at 2. Second, Mr. Perry argues that the hearing officer lost his impartiality by finding Mr. Perry guilty in this proceeding based in part on video from the earlier proceeding. *See id.*

A prisoner in a disciplinary action has the right to be heard by an impartial decision-maker. *Hill*, 472 U.S. at 454. A "sufficiently impartial" decision-maker is necessary to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam).

7

However, hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Moreover, the "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed on the prison staff. *Piggie*, 342 F.3d at 666. The presumption is overcome—and an inmate's right to an impartial decision-maker is breached—in rare cases, such as when the hearing officer has been "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

As to Mr. Perry's first assertion of bias, the fact that the hearing officer presided over earlier hearings involving Mr. Perry does not render him partial. *Id.* at 666. Moreover, the fact that Mr. Perry "lunged at" the hearing officer during one of those hearings is evidence of misconduct by Mr. Perry—not evidence of bias by the hearing officer. Hearing officers are presumed to be impartial absent contrary evidence, and these assertions do not reflect bias by the hearing officer. *See id.*

Mr. Perry's second assertion of bias comes closer but still falls short. Had the hearing officer gone in search of evidence outside the record or based his decision on evidence from a different hearing long ago, it might be fair to say that he was directly or substantially involved in *investigating* the claims against Mr. Perry. *Id.* at 667. But Mr. Perry's own submissions reveal that the hearing officer applied evidence he recalled seeing "just seconds before." Dkt. 18 at 1. The hearing officer did not have to "investigate" the allegations against Mr. Perry to find him guilty on that basis. *Piggie*, 342 F.3d at 667. Instead, the record simply suggests that the hearing officer saw evidence in one hearing, remembered it when it was fresh in his mind only minutes later, and found

it applicable to the second case. This does not reflect bias or an effort to find evidence to support a guilty finding. It reflects attentiveness, open-mindedness, and critical thinking, and due process does not require hearing officers to abandon these mindsets.

## IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. Mr. Perry's petition does not identify any arbitrary action in any aspect of the charge, disciplinary proceeding, or sanctions that entitles him to the relief he seeks. Accordingly, Mr. Perry's petition for a writ of habeas corpus must be **denied** and the action **dismissed with prejudice.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 11/6/2019

*Tanya Walton Pratt*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JASON SETH PERRY
138925
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Natalie Faye Weiss
INDIANA ATTORNEY GENERAL
natalie.weiss@atg.in.gov

9